# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CIMENGA M. TSHIBAKA, M.D.     \*

               \*

        **Plaintiff,**     \*

               \*

       **v.**     \*

               \*

**JOHN SERNULKA, individually and in his**     \*     **CASE NO. 1: 13-cv-02760-JFM**
**official capacity as CEO of CARROLL**     \*
**HOSPITAL CENTER, INC.; JAIME**     \*
**ELLIOTT, individually**     \*

               \*

        **Defendants**.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    \*    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANT JAIME ELLIOTT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Robin Locke Nagele
Elizabeth M. Hein
POST & SCHELL, P.C.
1600 J.F.K. Boulevard, 13th Fl.
Philadelphia, PA 19103
215-587-1114 (P)
215-320-4702 (F)
rnagele@postschell.com
ehein@postschell.com

Charles Bacharach
GORDON FEINBLATT LLC
233 E. Redwood Street
Baltimore, MD 21202
410-576-4169 (P)
410-576-4292 (F)
cbacharach@gfrlaw.com

*Attorneys for Defendants*

Dated: January 27, 2017

## I.      BACKGROUND

Defendant Jaime Elliott ("Elliott") moves, for a second time, to dismiss the defamation claim asserted against her by Plaintiff Cimenga M. Tshibaka, M.D. ("Plaintiff" or "Tshibaka") -- the last remaining claim in a multi-count action against Elliott, her employer Carroll Hospital Center, Inc., and its Chief Executive Officer John Sernulka, arising out of Elliott's complaint of sexual assault and Tshibaka's resulting loss of medical staff privileges following a thorough internal adjudication.  The Fourth Circuit affirmed dismissal of one count against Elliott, and summary judgment on all other counts against the Hospital and its CEO.  Fourth Circuit Opinion, Dec. 13, 2016 Unpublished Op. ("Fourth Circuit Op."), No 15-1839, Dkt. No. 70, attached as *Ex. A*.  The remaining defamation count should now be dismissed.

Tshibaka's defamation claim against Elliott is predicated on her complaint of sexual assault and resulting revocation of his privileges and report to the National Practitioner Data Bank ("NPDB") and Maryland State Board of Physicians ("MSBP").  Amended Complaint ("AC") ¶¶ 38, 47-50 (*Ex. B*).  The AC alleges: "Jaime Elliott, a wound technician at the Wound Clinic of the Hospital, uttered to other members of the staff, false and defamatory racially motivated accusations that she had been sexually assaulted by the Plaintiff."  *Id.* at 19.[1]  The AC alleges further that Elliott "wrote a false and defamatory report of the incidents upon which her false and defamatory statements were based" and "submitted this report to Joyce Romans, Vice President of Risk Management."  *Id.* at 20.  Tshibaka alleges that this report set in motion a chain of events that resulted in the loss of his medical staff privileges, and reports to the NPDB and MSBP.  AC ¶ 21-38.

_____

[1] Although the AC alleges that Elliott's sexual harassment complaint was "racially motivated," Tshibaka is foreclosed from pursuing this allegation because he has admitted, under oath, that he did not believe that Elliott's sexual harassment complaint was based on his race. *See* Fourth Circuit Op., at 25 (dismissing Section 1981 claim).

On November 14, 2013, shortly after this case was filed, this Court dismissed the defamation count against Elliott, ruling that the claim was barred by Maryland's absolute immunity doctrine. *See* Order Granting Motion of Jaime Elliott to Dismiss for Failure to State a Claim, ECF No. 21, and Memorandum Opinion, ECF No. 20. This Court also dismissed the only other count against Elliott, a claim under 42 U.S.C. § 1981 – a ruling which was upheld on appeal. ECF 20-21; Fourth Circuit Op., *Ex. A*, at 24-26.

Following the dismissal of Elliott from the lawsuit, both parties conducted discovery over the next sixteen months with respect to the remaining Section 1981 and state law claims against the Hospital and CEO Sernulka. On June 30, 2015, after the close of discovery, this Court granted summary judgment in favor of the Hospital and CEO Sernulka on all claims against them. *See* Order Granting Motion for Summary Judgment [of Defendants] and Denying Motion for Summary Judgment [of Plaintiff], ECF No. 90, and Memorandum Opinion, ECF No. 89. Significantly, the Memorandum Opinion found that the defendants had satisfied the standards set forth in the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et seq*. ("HCQIA"), and that immunity barred the state law claims brought against the defendants. Tshibaka appealed the summary judgment order, as well as the order dismissing Elliott, and the Fourth Circuit affirmed all aspects of both judgments except with respect to the defamation claim against Elliott. As to that count, the Fourth Circuit vacated the dismissal order with instructions that this Court reassess its dismissal, and specifically, that this Court examine the interplay between Maryland's common law <u>absolute</u> immunity doctrine, on which the dismissal was based, and the <u>qualified</u> immunity afforded participants in "medical review committees" under § 1-401 of the Maryland Health Occupations Article and § 5-637 of the Courts and Judicial Proceedings Article (hereinafter referred to collectively as the "Medical Review Committee Statute" or "MRCS").

On remand, Elliott now renews her motion to dismiss the defamation count for failure to state a claim upon which relief can be granted. On the current record, there exist two independent grounds for dismissing the defamation count. First, the federal HCQIA defense that now, on remand from the Fourth Circuit, is established as the law of the case, confers absolute immunity on Elliott as a participant in the professional review action that resulted in the revocation of Tshibaka's privileges. Second, Elliott is entitled to absolute state law immunity for her complaint of sexual harassment, an immunity that has not been abrogated by the statutory qualified immunity for medical review committees set forth in the MRCS.

## II.    STATEMENT OF FACTS

For purposes of this Motion to Dismiss, the relevant facts are set forth in the AC (*Ex. B*), Transcript of the July 9, 2013 Hearing (*Ex. C*), and the Hospital's Medical Staff Bylaws (2013) (*Ex. D*).[2] In addition, for purposes of the Maryland absolute immunity defense, this Court is asked to take judicial notice of the Final Decision and Order of the Maryland State Board of Medicine revoking Tshibaka's medical license for a period of one year. *In Re: Cimenga M. Tshibaka, M.D.*, License No., D63895 and Case No. 2014-0127 (July 23, 2015) (*Ex. E).*[3]

---

[2] A district court may consider documents attached to the complaint, as well as those attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Sowell v. Wilson*, 2016 U.S. Dist. LEXIS 177891, *4-5 (N.D.W.Va. Nov. 23, 2016) (citing *Sec'y of State for Defense v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007)). No questions about the authenticity of the hearing transcript, or Medical Staff Bylaws have been raised in the course of this litigation, and Plaintiff previously placed the hearing transcript before the District Court during briefing on the prior Motion to Dismiss. *See* Exhibit 1 to Plaintiff's Opposition to Motion to Dismiss of Defendant Jaime Elliott, ECF No. 18. Defendants previously placed the Medical Staff Bylaws before this Court in the first Motion to Dismiss of Jaime Elliott. *See* Ex. A to Motion to Dismiss of Jaime Elliott, ECF No. 14.

[3] Because the license revocation by the MSBP had not occurred as of the time of the original Complaint or Elliott's initial Motion to Dismiss, it was not part of the original record. However, the Final Decision and Order revoking Tshibaka's medical license is a public document of which this Court can take judicial notice to the extent that it is now relevant to

Defendant Elliott is a female patient care technician employed in the Wound Care Center of the Hospital. AC, *Ex. B*. at ¶ 19. On June 24, 2013, she reported to "other members of the staff" that she had been sexually assaulted by Tshibaka. *Id*. These staff members were Levering, her direct supervisor, and Freedman, another supervising nurse in the Wound Care Center. (Hearing Transcript, *Ex. C*, at 35:21-37:7; 78:11-79:17; 85:4-87:5; 109:18-21; 113:15-114:17). Elliott told her supervisors that, during the shift that day, Tshibaka had, in two different incidents, groped her buttocks and breasts. (Hearing Transcript, *Ex. C*, at 39:3-18; 85:4-87:5, 113:15-116:4). Levering first called her own direct supervisor, McLeod, and then contacted another supervisor, Goldman, who came right over. (Hearing Transcript, *Ex. C*, at 42:2-43:13; 113:15-116:4). Elliott told her what had happened, and Goldman told her to put it in writing. (Hearing Transcript, *Ex. C*, at 42:2-43:13). Elliott wrote up a statement, and first thing the next morning, gave it to McLeod. (Hearing Transcript, *Ex. C*, at 43:11-44:4).

After Elliott's complaint was made, it was reported in writing to the Vice President of Risk Management (AC, *Ex. B*, ¶ 20), and was then investigated by CEO Sernulka, who made a finding of Probable Cause that sexual harassment had occurred, and suspended Tshibaka's privileges. AC, *Ex. B*, ¶ 21; Medical Staff Bylaws, *Ex. D*, § 10.2.1.2. Pursuant to the Bylaws, that decision was presented to, and upheld by, the Medical Executive Committee. AC, *Ex. B*, ¶¶ 25-26; Medical Staff Bylaws *Ex. D*, § § 10.2.3.1-10.2.3.2. Tshibaka then had the right to appeal that decision and request a hearing, which he did. AC, *Ex. B*, ¶¶ 25, 29; Medical Staff Bylaws, *Ex. D*, §§ 10.2.3.2.2; 10.3.2.1.2. He was entitled to written advance notice of the hearing, and

Elliott's immunity defense. *Dyer v. Md. State Bd. of Educ.*, 2016 U.S. Dist. LEXIS 66439, *14 (D. Md. May 20, 2016) (taking judicial notice in evaluating a motion to dismiss of State Board of Education opinions and orders). Moreover, this Court's consideration of this public record does not have the effect of converting this 12(b)(6) motion to a motion for summary judgment. *Hall v. Virginia,* 385 F.3d 421 (4th Cir. 2004), citing *Papasan v. Allain,* 478 U.S. 265, 268 (1986).

notification of witnesses who would testify. Medical Staff Bylaws, *Ex. D*, § 10.3.3.4. As prescribed by the Bylaws, that hearing occurred before a panel of three peers on the medical staff. AC, *Ex. B*, ¶ 29; Medical Staff Bylaws, *Ex. D*, § 10.3.3.1  The parties had the right to appear and be represented by counsel, to testify and present witnesses, to confront witnesses, to examine witnesses under oath, impeach the credibility of witnesses, offer and refute relevant evidence, and to present oral and written argument. Medical Staff Bylaws, *Ex. D*, § 10.3.3.5. A transcript was generated. Medical Staff Bylaws, *Ex. D*, § 10.3.3.7.

After the hearing, the Hearing Panel issued a written decision. AC, *Ex. B*, ¶ 35; Medical Staff Bylaws, *Ex. D*, § 10.3.4. Tshibaka appealed, and an appellate proceeding was held before the Board of Directors. *Id.*; Medical Staff Bylaws, *Ex. D*, § 10.3.5. The matter was heard on the record. *Id.* The Board then issued its final, written decision in the mater, revoking Tshibaka's medical staff privileges. AC, *Ex. B*, ¶ 37.  The hospital reported its action to the NPDB and the MSBP. AC, *Ex. B*, ¶ 38.

After the filing of this lawsuit, the MSBP investigated the report of sexual harassment and, on July 23, 2015, following an extensive quasi-judicial hearing and review process, revoked Tshibaka's medical license for a period of one year. *Ex. E*.

## III.   ARGUMENT

### A.   Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief may be granted challenges the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint should be dismissed when it fails to allege facts sufficient to state a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when its factual content allows a court to draw a *reasonable* inference that the defendant is responsible for the alleged misconduct. *Ashcroft v. Iqbal*, 556

U.S. 662 (2009). *Iqbal's* plausibility standard, however, demands more than the mere *possibility* that the defendant acted unlawfully. *Id*. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that plaintiff is entitled to relief." *Id*. Moreover, a district court must dismiss a claim where the allegations in the complaint do not state a valid legal theory to support the claim. *Deibler v. Quicken Loans, Inc*., 2016 U.S. Dist. LEXIS 11997, *8-10 (D. Md. Feb. 1, 2016).

> **B.      Tshibaka Cannot State a Claim for Defamation Upon Which Relief Can Be Granted Because HCQIA Immunizes Elliott From Damages for State Law Claims**

As a matter of law, HCQIA immunizes Elliott from all state claims arising out of the Hospital's professional review action against Tshibaka and the investigations that relate to that professional review action. All other state law claims in this case, including the defamation counts, were dismissed on the basis of the HCQIA immunity defense. *See* Fourth Circuit Op., *Ex. A*, at 26-30. The remaining defamation claim arising out of the same operative facts must likewise be dismissed.

In its June 30, 2015 Order granting Summary Judgment to Defendants, this Court found that the elements set forth in 42 U.S.C. § 11112(a) had been satisfied, and that HCQIA immunity applied. The Fourth Circuit adopted the reasoning of the District Court with respect to HCQIA and affirmed the finding that HCQIA applied in its December 13, 2016 Order. This ruling is now law of the case. Under the law of the case doctrine and mandate rule, when an appellate court decides upon a rule of law, that decision continues to govern the same issues in subsequent stages in the same case. *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)*; United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).

Given the ruling that the required elements for HCQIA immunity were satisfied, Elliott cannot be liable in damages for the defamation claim that remains against her because she is a

"person who participate[d] with or assist[ed] the [professional review body] with respect to the [professional review action]," pursuant to 42 U.S.C. § 11111(a)(1)(D). *See Kunajukr v. Lawrence & Mem. Hosp.*, 2009 U.S. Dist. LEXIS 129545, 71, 71 n. 18 (D. Conn. Jan. 12, 2009) (dismissing defamation claims against individual physicians based on statements that initiated procedures to revoke defendant's privileges because the professional review action met the standards of §11112(a)); *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 2004 U.S. Dist. LEXIS 28094, *47-48, 61-62 (N.D. Tex. Aug. 18, 2004) (dismissing claims against a lab technician who submitted a complaint about the disruptive behavior of a physician, despite evidence that the technician acted with malice, because the hospital's peer review proceedings met the standards in 42 U.S.C. § 11112(a)); *Singh v. Blue Cross and Blue Shield of Massachusetts, Inc.*, 182 F. Supp. 2d 164, 175 (D. Mass. 2001), *aff'd*, 308 F. 3d 25, 44 (1st Cir. 2002) (dismissing claims brought against a physician who performed an audit of the defendant's medical practice and provided the results to the peer review committee); s*ee also Imperial v. Suburban Hosp. Ass'n*, 862 F. Supp. 1390 (D. Md. 1993), *aff'd* 37 F.3d 1026 (4th Cir. 1994) (dismissing state law claims against individual physicians, including a physician who was not a member of any of the relevant committees, but who provided information and served as a witness, because the professional review actions satisfied the HCQIA requirements).

The professional review action in this case met the standards of § 11112(a), and Elliott is a person who assisted the professional review body with respect to the professional review action. She is therefore entitled to HCQIA immunity with respect to the defamation claim.[4] The

---

[4] Had the HCQIA standards not been met, Elliott would have been entitled to *qualified* immunity under a separate provision found in § 11111(a)(2), which provides immunity for a witness who "provid[es] information to a professional review body regarding the competence or professional conduct of a physician . . . unless such information is false and the person providing it knew that such information was false." However, in this case, where the court has ruled that

7

immunity extends to the defamation claim premised on her testimony before the hearing panel, as well as to her initial complaints to her supervisors and submission of a written complaint, which served to initiate the action against Tshibaka.  HCQIA immunity covers not just the professional review action, but also "professional review activities" relating to the ultimate action.  *Austin v. McNamara*, 979 F.2d 728, 737 (9th Cir. 1992) (professional review activities, including investigations, fall within the immunity provided for professional review actions); *Kunajukr*, 2009 U.S. Dist. LEXIS 129545 at *71 ("defendants are immune from defamation claims under the HCQIA for statements made during the course of professional review activities when the professional review actions for which they provide support or assistance are found to meet the standards for immunity").

The basis for Tshibaka's claim of damages is that Elliott's statements ultimately led to the professional review action in this case, pursuant to which Tshibaka's privileges were revoked, and a report was made to the NPDB and MSBP.  Elliott's statements fall under the umbrella of the HCQIA immunity because the hospital's professional review action met the standards set forth in § 11112(a).  The defamation count against her must therefore be dismissed on the basis of the federal HCQIA defense.

---

the standards of § 11112(a) were met, Elliott, like the other defendants, is entitled to *absolute* immunity from the state law claim for damages.  *See Jenkins*, 2004 U.S. Dist. LEXIS 28094 at *48 (explaining that the immunity provision in § 11111(a)(1)(D) provides a second opportunity for immunity for persons who assist professional review actions by providing information), *Singh*, 182 F. Supp. 2d at 175 (recognizing the dual basis for immunity under HCQIA for a person who assists a professional review body by providing information); *Kunajukr*, 2009 U.S. Dist. LEXIS 129545 at 71 n. 18 (same).

**C.    Tshibaka's Defamation Claim Against Elliott Must Be Dismissed Because Elliott Had an Absolute Privilege Under Maryland Law to Complain of Sexual Assault by Tshibaka.**

Elliott is also entitled to dismissal under state law.  As this Court previously ruled on November 14, 2013, Elliott had an absolute privilege to make a complaint of sexual assault against a physician.  Maryland's Medical Review Committee Statute did not abrogate this absolute common law privilege.[5]

The Maryland high court has recognized and applied the absolute privilege in non-judicial proceedings when "the same policy considerations which underlie the application of the privilege in the judicial sphere are . . . present."  *Imperial v. Drapeau*, 716 A.2d 244, 249 (Md. 1998).  Such policy considerations are present when victims complain of sexual misconduct against persons in a position of authority or public trust, and where the procedural protections attendant to an adversarial hearing are available to the defendant.  *Reichardt v. Flynn*, 823 A.2d 566 (Md. 2003); *Miner v. Nvotny*, 498 A.2d 269, 274-275 (Md. 1985).

In remanding this Court's dismissal of the defamation count against Elliott for further consideration, the Fourth Circuit commented that the following factors made it "somewhat hesitant:" (1) it was not aware of cases applying absolute immunity in the context of a "non-governmental administrative proceeding" such as hospital peer review, and (2) it was unsure of the impact of the MRCS and its potential interplay with common law immunity  -- issues that

---

[5] While the Fourth Circuit acknowledged that further proceedings in the district court might include certification to the Court of Appeals of Maryland pursuant to Md. Code Cts. & Jud. Proc. 12-603, *see* Fourth Cir. Op., Ex. A, at 32 n.9, there is no need for this Court to certify the question as to the effect of the Maryland Medical Review Committee Statute. The decision to certify a question to the Maryland high court is discretionary.  *See Boyter v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382, 1385 (4th Cir. 1981).  Federal courts may decide not to certify a question where the court can reach its own "reasoned and principled conclusion," s*ee Hafford v. Equity One, Inc*., 2008 U.S. Dist. LEXIS 3196, *14-15 (D. Md. March 31, 2008), or where the issue is not dispositive, *see Benway v. Res. Real Estate Servs., LLC*, 2011 U.S. Dist. LEXIS 28425, *13-17 (D. Md. March 16, 2011).

this Court had not evaluated issue in its initial ruling.  (Fourth Circuit Op., *Ex. A*, at 31).  Neither issue should disturb in any way this Court's initial conclusion that Elliott is protected by absolute immunity.

Elliott's sexual harassment complaint was made and adjudicated by the hospital as part of a regulatory scheme authorized and dictated by federal and state regulations.  Pursuant to these regulations, the complaint was rigorously tested through a government-prescribed internal hospital hearing and appeal process resulting in the revocation of Tshibaka's hospital privileges, and then, based on a government-mandated report of the revocation to the MSBP, was tested again through an extensive hearing and review process that resulted in a one-year revocation of his medical license.  *Ex. E.*  The public function element and the extensive procedural protections were clearly present in this case, thus providing the predicate for the common law absolute privilege.  And, although the MRCS affords qualified immunity for persons participating in hospital peer review proceedings, it does not abrogate the absolute immunity for those individuals whose complaints of physician misconduct lead to professional review and adverse licensure action.

<div style="padding-left:2em;">

1.  <u>The Sexual Harassment Complaint's Public Function Coupled with the Ample Procedural Safeguards Provide the Predicate for Application of the Absolute Immunity Doctrine</u>

</div>

The applicability of the common law absolute immunity doctrine turns on two specific factors, both of which are present in this case: (1) the nature of the <u>public function</u> of the proceeding, and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.  *Gersh v. Ambrose*, 434 A.2d 547, 551-52 (Md. 1981).  Nowhere has common law immunity been limited in its application to <u>government</u> administrative proceedings.

### a.      The Public Function of the Proceeding

The first prong -- the nature of the public function of the proceeding -- depends on whether the proceeding's function is connected with a legitimate public interest, such as avoiding abuses by persons in positions of public trust or authority. *Offen v. Brenner,* 935 A.2d 719, 729-730 (Md. 2007).  It is certainly in the public interest to protect a hospital staff member's complaint of sexual harassment against a physician such as Tshibaka. *See Board of Physician Quality Assur. v. Banks*, 729 A.2d 376, 380 (Md. 1999) (agreeing with the Board of Physician Quality Assurance that sexual harassment by a physician was grounds for suspension or revocation of a physician license because it ". . . affected and soured the hospital working environment, thereby having a direct impact on patient care . . . .") (internal quotations omitted). Elliott's sexual harassment complaint served a public function by bringing forth an issue that ultimately led to the revocation of Tshibaka's hospital privileges and a one-year revocation of his medical license. *Ex. E*.

As the Maryland Court of Special Appeals noted in concluding that accusations of misconduct by a public school teacher met the "public function" prong, "[t]here really is nothing more important to the core of the well-being of our community, our State and our nation than the public school system." *Reichardt v. Flynn*, 823 A.2d 566, 573 (Md. 2003) (quoting *Flynn v. Reichardt*, 749 A.2d 197, 202 (Md. Ct. Spec. App. 2000)). That the words "health care" could easily be substituted for the words "public school" in this passage demonstrates why it is appropriate for Elliott's sexual assault complaint to receive absolute immunity. *See Reichardt*, 823 A.2d at 572 (analogizing the public trust placed in a school teacher to public trust placed in a police officer and finding that a sexual harassment complaint against a public school teacher was sufficiently in the public interest to meet the first prong for absolute immunity).  Where, as here, the subject of the complaint occupies a position of public trust, "the possible harm a false . . .

complaint may cause to [the accused's] reputation . . . is outweighed by the public's interest in encouraging" victims to come forward. *Id*., quoting *Miner*, 498 A.2d at 274-75. Without the special protection afforded by the absolute privilege, victims will be deterred from making complaints against those in power.

The fact that Elliott's sexual complaint served a public function is made plain by the highly regulated context in which it arose. The activities that surround the granting and revocation of medical staff privileges by licensed hospitals to their staff physicians are subject to the requirements of state licensing regulations, federal HCQIA requirements, Centers for Medicare and Medicaid ("CMS") Conditions for Participation, and accrediting agency requirements – all in furtherance of protecting the public interest in hospital safety. Maryland hospital licensing regulations require hospitals to conduct oversight of physicians who have staff privileges at the hospital by credentialing such physicians and establishing a formal written process for reappointment of physicians at least every two years. Md. Health Gen. Code Ann. § 19-319(e)(2)(i); 19-319(e)(4)(iii). Hospitals must document the physician's pattern of performance, including claims filed against the physician, adherence to hospital bylaws, policies and procedures, and the physician's attitudes, cooperation, and ability to work with others. Md. Health Gen. Code Ann. § 19-319(e)(4)(iii)(1),(4); COMAR § 10.07.01.24(E)(3)(b)(i), (iv), (vii).

The substantive standards governing physician conduct in hospitals are prescribed by The Joint Commission ("TJC") whose requirements have been incorporated by reference into state and federal law. *See* TJC Hospital Accreditation Standards, § LD.03.01.01, EP 4-5; MS 06.01.01, Introduction (explaining that "interpersonal and communication skills" and "professionalism" are among the core competencies that must be addressed in the credentialing

process); Md. Health Gen. Code Ann. § 19-2302(c)(i),(d) (Maryland hospital regulations);[6] 42 C.F.R. § 488.4 (federal Medicare requirements).[7]  In particular, TJC requires hospitals to develop and implement "zero tolerance" policies and procedures for intimidating and/or disruptive behaviors, and to develop and implement policies and procedures regarding disciplinary actions in response to intimidating or disruptive behaviors.  *See* TJC, "Sentinel Event Alert: Behaviors that Undermine a Culture of Safety," Issue 40 (July 9, 2008) (available at https:// www.jointcommission.org/sentinel_event_alert_issue_40_ behaviors_that_ undermine_a_ culture_of_safety/) (last accessed January 13, 2017).[8]

The procedural aspects of hospital privileging proceedings are also governed by TJC accreditation requirements, and by extension, state and federal law.  *See* TJC Hospital Accreditation Standards, § MS.01.01.01. EP 32-35; MS.10.01.01); *see supra*, *fns*. 6 and 7.  They are further defined by the standards set forth in HCQIA and Maryland law, pursuant to which hospitals are required to report adverse privileging actions to the MSBP and NPDB, and which provide immunity for doing so.  *See* 42 U.S.C. § 11133(a)(1)(A); 11137(c) (federal); Md. Health Occup. Code Ann. § 14-413 and Md. Courts and Judicial Proceedings § 5-715 (d) (state).[9]  In

---

[6] A hospital that demonstrates substantial compliance with an approved accreditation organization's standards is "deemed" to have met State licensure requirements.  *Id*.

[7] A hospital that demonstrates full compliance with an approved accreditation program, such as TJC, is "deemed" to meet the requirements for participation in the Medicare program and other federal healthcare programs.  *Id*.

[8] TJC's requirements stem from its recognition that unprofessional behavior fosters medical errors, contributes to poor patient satisfaction and preventable adverse outcomes, increases the cost of care, and causes qualified personnel to seek new positions in more professional environments.  *Id*.

[9] 42 U.S.C. § 11112(a) states that: "For purposes of the protection set forth in section §11111(a) of this title, a professional review action must be taken –
(1) in the reasonable belief that the action was in furtherance of quality health care,

Maryland, such a report results in a mandatory investigation and potential disciplinary action, subject to procedural safeguards prescribed by state law. Md. Health Occup. Code Ann. § 14-401.1. In this case, the hospital's mandated report to the MSBP led to a one-year revocation of Tshibaka's medical license, after a full investigation, hearing and appeal process before the MSBP. *Ex. E.* Given that the Maryland legislature, United States Congress, CMS, and TJC both mandate and regulate hospital professional review activities in the broader interest of promoting patient welfare, it is clear that a hospital's activities surrounding physician privileging and professional review serve a public function for purposes of the first prong of the absolute immunity test.

### b.  *Ample Procedural Safeguards were Afforded Tshibaka*

In addition to there being an unquestionably public function served by Elliott's sexual harassment complaint, Tshibaka received the benefit of extensive procedural safeguards designed to test her allegations  (both at the hospital level and before the MSBP), on par with those present in cases where the absolute privilege has previously been recognized. Maryland courts have applied the absolute privilege where the relevant proceeding was adversarial (i.e., it was conducted before a formal tribunal, a formal hearing record was created, witnesses testified under oath, the parties could testify, examine, and cross-examine witnesses, a record of the proceeding was kept, and the tribunal issued a written decision with a supporting rationale). *See, e.g.*, *Odyniec v. Schneider*, 588 A.2d 786, 792 (Md. 1991) (finding sufficient  procedural

---

(2) after a reasonable effort to obtain the facts of the matter;

(3) after adequate notice and hearing procedures are afforded to the physician involved, or after such other procedures as are fair to the physician under the circumstances; and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

safeguards in a health claims arbitration proceeding before an impartial tribunal of three arbiters, pursuant to rules that permit witness examination and cross-examination, sworn testimony, evidentiary rules, the right to counsel, and a written decision by the tribunal).

The cases where the privilege has been denied are those where there was no formal tribunal administering the proceeding, there was no adversarial hearing, no compellable witnesses were sworn or cross-examined, no reviewable opinion or analysis was generated, and where the court found that "most significantly, the target of the allegedly defamatory statements did not have the opportunity to present his side of the story." *McDermott v. Hughly*, 561 A.2d 1038 (Md. 1989); *Gersh*, 434 A.2d at 551 (no absolute privilege for voluntary statements to the Baltimore City Community Relations Commission because the "ordinary open public meeting" was not an adversarial proceeding in which the statements could be tested by cross-examination, parties were not represented by counsel, and witnesses were not sworn); *see also Arroyo v. Rosen*, 648 A.2d 1074, 1078 (Md. Ct. Spec. App. 1994) (no absolute privilege where proceedings were not public, the witnesses were not under oath or subject to cross examination, and a complete record was not kept).[10]

In this case, Tshibaka had the benefit of an extensive adversarial hearing and appeal process at the hospital level pursuant to the procedural safeguards outlined in the Hospital's Medical Staff Bylaws. Statement of Facts, *supra*, pp. 4-5, and Medical Staff Bylaws, *Ex. D*, Article X, § 10.3.3.5. As has been discussed, those procedural safeguards are driven by the

---

[10] The *dicta* in the *Arroyo* opinion questioning whether there was a legitimate public interest in the medical review proceeding at issue in that case, *see* 648 A.2d at 1077, should not lead this Court to deny absolute immunity in this case. Despite this *dicta*, in *Arroyo* the Maryland Court of Special Appeals *assumed* that there was a public interest in the soundness of scientific research, and denied absolute immunity because the *procedural protections* were inadequate. 648 A.2d at 1078.

requirements set forth in licensing regulations, TJC accreditation standards, and HCQIA.  In addition, he was subsequently afforded a second, full adversarial hearing on the same allegations before the MSBP.  *Ex. E*.  The procedural protections offered Tshibaka a thorough opportunity to attempt to discredit the complaint brought against him before multiple tribunals, including the state licensing authority.  Under these circumstances, absolute immunity attaches to Elliott's complaints of sexual harassment.

        2.        <u>The Maryland Medical Review Committee Statute Does Not Preclude Application of the Absolute Privilege for Sexual Harassment Complainants</u>

The general conditional privilege provided in the Medical Review Committee Statute does not preclude the recognition of a specific absolute privilege in this case.[11]  The MRCS extends qualified immunity broadly to many types of state and federal review committees operating in the state of Maryland, but does not displace all other applicable privileges and immunities.  Its protections act as a floor, not a ceiling.

By its own terms, the MRCS covers a broad range of entities and activities.  "Medical review committees" can include such diverse entities as state or federal regulatory boards (Md. Code Health Occ. § 1-401(b)(1)), professional society committees (§ 1-401(b)(2)), committees of the Maryland Institute for Emergency Medical Services Systems (§ 1-401(b)(4)), local hospital

---

[11] As noted above, the Medical Review Committee Statute (MRCS) is actually a collection of statutory provisions that together create the qualified privilege at issue in this case: Md. Code Health Occ. § 1-401(f), "A person shall have the immunity from liability described in § 5-637 of the Courts and Judicial Proceedings Article for any action as a member of a medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee."  A "medical review committee" is defined in Md. Code Health Occ. § 1-401(a)(3) as "a committee or board that (i) [i]s within one of the categories listed in [Md. Code Health Occ. § 1-401(b)]; and (ii) [p]erforms functions that include at least one of the functions listed in [Md. Code Health Occ. § 1-401(c)]."  According to Md. Code Cts. & Jud. Proc. § 5-637(b), "A person who acts in good faith and within the scope of a medical review committee is not civilly liable for . . . giving information to, participating in, or contributing to the function of a medical review committee."

peer review committees (§ 1-401(b)(5), pharmacy quality assurance committees (§ 1-401(b)(6)), and accrediting organizations (§ 1-401(b)(12)). Functions of a medical review committee include: (1) evaluating and seeking to improve the quality of care provided by health care providers, (2) evaluating the need for and level of performance of health care provided by health care providers, (3) evaluating the qualifications, competence, and performance of health care providers, and (4) evaluating and acting on matters related to the discipline of any health care provider. § 1-401(c)(1)-(4). The MRCS addresses the confidentiality of the proceedings, records, and files of medical review committees, as well as the immunity at issue in this case.

Nothing in the expressed language of the MRCS suggests that medical review committee participants would be precluded from availing themselves of any other applicable privilege, including the common law absolute immunity privilege. To the contrary, the broad reach of the MRCS, extending to a host of state and federal entities, undermines any suggestion that the Maryland legislature intended to abrogate other applicable privileges. Certainly, under federal preemption and federalism principles, the Maryland legislature did not have the authority to displace any federal immunity doctrines, such as HCQIA immunity, that would otherwise apply to medical review committees operating within the state. *See Bender v. Suburban Hosp*., 758 A.2d 1090, 1104-05 (Md. Ct. Spec. App. 2000) (noting that the standard for immunity under the MRCS is different from that under HCQIA, but finding that the statutory privileges may co-exist).

Maryland courts do not presume abrogation of the common law unless the Legislature's intent to do so is clear. *Antonio v. SSA Sec., Inc*., 110 A.3d 654, 658 (Md. 2015). "For a statute to abrogate a right available at common law, its language must expressly indicate or imply an abrogation by 'a statutory scheme that is so clearly contrary to the common law right that the two

cannot occupy the same space.'" *MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*, 2013 U.S. Dist. LEXIS 113061, *53 (D. Md. Aug. 12, 2013) (quoting *Nickens v. Mount Vernon Realty Grp.*, LLC, 54 A.3d 742, 755 (Md. 2012)). Nothing in the text, legislative history, or interpretive case law of the MRCS suggests that the provisions were intended to strip away protections otherwise available to persons reporting misconduct of those in positions of trust.

Courts evaluating the potential privileges applicable to Maryland defamation claims have not interpreted the statute as excluding other privileges that might be available, depending on the circumstances. *See, e.g., Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999) (holding that absolute immunity barred a false-light action against a peer reviewer notwithstanding an applicable statutory conditional immunity);[12] *Imperial v. Drapeau*, 716 A.2d 244 (Md. 1998) (holding that absolute immunity barred a defamation complaint against a physician who complained about an Emergency Medical Technician ("EMT") notwithstanding the potential applicability of the MRCS's qualified immunity to the review of the complaint by the Maryland Institute for Emergency Medical Services Systems ("MIEMSS")).

Significantly, in *Imperial*, the Maryland high court held that absolute immunity barred a defamation claim against a physician who wrote a letter to government officials complaining of an EMT's conduct and requesting an investigation and "peer review." 716 A.2d at 244, 247, 252. In holding that absolute immunity applied to that complaint, the court found that the quality of pre-hospital emergency medical care was a matter of public importance, and that "[f]ear of a

_____

[12] In *Ostrzenski*, the Fourth Circuit applied absolute immunity because of the strong need to ensure that peer reviewers perform their functions for the public good without harassment and intimidation, and the existence of adequate procedural safeguards. This decision negated the district court's finding that the defendant peer reviewer's immunity for the false light claim was governed by the conditional immunity conferred by Md. Code Ann. Cts. & Jud. Proc. § 5-715(b) (which finding, however, had not saved the claim from dismissal). *See* 3 F. Supp. 2d 648, 651-52 (D. Md. 1998), *aff'd* 177 F.3d 245 (4th Cir. 1999).

potential defamation action discourages the reporting of any complaints, including those that the monitoring authorities would conclude, after investigation, were meritorious." *Id*. at 250-51. The court's analysis noted that the complaint was investigated and acted on by MIEMSS – an organization whose activities are expressly covered by the MRCS's qualified immunity provisions. Md. Health Occ. Code § 1-401(b)(4).[13] That fact, however, did not deter the Maryland Appeals Court from finding that the complaint about the EMT was protected by the common law absolute immunity doctrine.[14]

Nor does the legislative history of the MRCS suggest that it was intended to displace any common law privileges that might apply. The MRCS was enacted for the broad purpose, *inter alia*, of encouraging medical peer review of physicians relative to their professional competence and conduct. *See Sibley v. Lutheran Hosp*., 709 F. Supp. 657, 661 (D. Md. 1989), *aff'd*, 871 F.2d 479 (4th Cir. 1989) ("The conditional privilege . . . embodies the important public policy of protecting the welfare of patients by assuring the free exchange of information during the deliberations of medical review committees."). Although non-physicians may participate in peer review, as a general matter the statute was designed to encourage physicians to participate in the process. *See Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A*., 162 F.R.D. 94, 97 (D. Md. 1995) (the legislature enacted the statute in part to combat the reluctance of physicians to participate);

---

[13] Not only is MIEMSS expressly covered by the MCRS, but the MIEMSS incident review committee was recognized as a "medical review committee" in *Tyndall v. Berlin Fire Co*., 2014 U.S. Dist. LEXIS 176533 (D. Md. Dec. 23, 2014) (Mag. J. Op.) (concluding that the documents of the MIEMSS incident review committee were not discoverable).

[14] The Maryland high court commented extensively on the regulatory scheme in which the complaint against the EMT was investigated and resolved, but did not address whether the common law absolute immunity that it recognized in that case might be displaced by the MRCS's qualified immunity.

*Cf.* 42 U.S.C. § 11101(5) ("There is an overriding national need to provide incentive and protection for physicians engaging in professional peer review.")

The MRCS has been amended and renumbered numerous times since its original publication, with no indication of any intent from the Maryland legislature to limit or displace the absolute immunity that might apply in narrow circumstances, where justified by public policy, as here. When the immunity provision was amended in 1990 with the enactment of Md. Code Cts. & Jud. Proc. § 5-637(b), the legislature emphasized that: "[T]he provisions of this Act are intended <u>only</u> to consolidate the current provisions on immunities, limitations on liability, and other prohibited actions in the Annotated Code of Maryland. . . <u>and there is no intent to alter substantively any statutory or common-law immunities</u>, limitations on liability, or prohibited actions." Acts of 1990, Ch. 546, § 4, 1990 Md. Laws 2453 (emphasis added).[15] If the legislature had intended to limit or abrogate the common law absolute immunity it would have so stated explicitly.

Nor is the statutory scheme embodied by the MRCS so contrary to the recognition of an absolute privilege for individuals who complain of sexual harassment that the two privileges cannot co-exist. *See Antonio v. SSA Sec., Inc.*, 110 A.3d at 658 ("When the intent of the Legislature is unclear with regard to abrogation, we will interpret the statute to be congruent with the common law."). Recognizing the availability of absolute immunity in this case does not detract from the MRCS's purposes. It does not remove any immunities available under the MRCS; it simply makes available an <u>additional</u> immunity available in rare circumstances, for persons who complain of misconduct by a person in a position of authority, when their complaint

_____

[15] The provisions now found in Md. Code Health Occ. § 1-401(f)(2) were added in 2002. *See* Acts of 2002, Ch. 158, 2002 Md. Laws 1579. Nothing in the legislative history suggests that the intent was to eliminate the absolute immunity that would otherwise be available to a person in Elliott's position.

leads to adverse action after procedural safeguards were available. Recognizing the availability of absolute immunity in this case also serves the recognized policy goals of proper administration of justice, *see Odyniec*, 588 A.2d at 526 (recognizing the social benefit of candid participation by witnesses in health care malpractice arbitration), and encouraging victims of misconduct by persons in positions of authority to come forward, *see Offen*, 935 A.2d at 729-31 (collecting cases in which Maryland courts have recognized this as a legitimate societal interest), and prevents the relitigation of matters that have been fully considered and adjudicated in an administrative or quasi-judicial setting.

Plaintiff may argue that the grant of qualified immunity to medical review committee participants set forth in the MRCS means that *only* such immunity is available. But he cites to no case that requires this approach. Rather, Maryland courts have validated the co-existence of absolute and conditional privileges in other instances, where adequate procedural safeguards exist. For example, although reporting a crime is entitled to only limited immunity, *see Indep. Newspapers, Inc. v. Brodie,* 966 A.2d 432, 459 (Md. 2009), a complaint alleging police criminal misconduct is afforded absolute privilege. *See Miner*, 498 A.2d at 294-95.[16] As previously discussed, although the Act provides qualified immunity to medical review committee participants, absolute immunity applies to a complaint investigated by MIEMSS, a medical review committee. *See Imperial*, 716 A.2d at 250-52. And, although Md. Code Cts. & Jud. Proc. § 5-615 provides only qualified immunity to health care malpractice <u>arbitrators</u>, absolute

---

[16] In another context, the Maryland high court denied absolute immunity to the defendant police officers because of the inadequate procedural protections in the search warrant application process, *not* because additional available common law and statutory conditional privileges displaced absolute immunity. *Smith v. Danielczyk*, 928 A.2d 795, 806-816 (Md. 2007). The Court's analysis evaluated the applicability of the respective privileges based on the circumstances, without any assumption that the existence of one privilege excluded another.

immunity applies to an <u>expert witness</u>'s statements in a malpractice arbitration. *See Odyniec*, 588 A.2d at 791, 793 (holding that even an unsolicited, irrelevant comment made prior to the actual arbitration hearing was covered by absolute immunity because of the social benefit derived from free and candid participation by potential witnesses, and availability of procedural safeguards to minimize the occurrence of defamatory statements). In fact, Maryland courts have already explicitly recognized that MRCS and HCQIA provide different types and levels of statutory privilege to hospital peer review activities that complement each other. *Bender, supra*, 758 A.2d at 1104-05. If these federal and state immunities can comfortably co-exist, then so too can the common law absolute immunity doctrine co-exist with both.[17]

The MRCS thus acts as no impediment to the application of the absolute privilege where, as here, the public policy and due process requirements are both met.

---

[17] *Rite Aid v. Hagley*, 824 A.2d 107 (Md. 2003), cited by Plaintiff on appeal, does not stand for the principle that a statutory qualified immunity necessarily displaces an available absolute immunity. In *Rite Aid*, a store manager was sued for defamation, among other causes of action, for making a report of suspected child abuse. The store manager's report was prompted by images of an adult with a nude child found after he developed film dropped off by a store customer. The Court found that the defendant was entitled to qualified immunity for making a good faith report of child abuse or neglect pursuant to Md. Family Law Code § 5-708 and Md. Code Cts. & Jud. Proc. § 5-620. Absolute immunity was not asserted, and presumably would not have been available because (i) the complaint was not made by a victim against a person in a position of public trust, and (ii) no procedural safeguards were afforded. The only issue was whether the defendant was entitled to qualified immunity under the applicable statutory provisions. On summary judgment, the Court ruled that the defendant was entitled to such immunity as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Tshibaka has not (and cannot plausibly) allege facts sufficient to support his defamation claims against Defendant Elliott in her individual capacity. Both HCQIA and the common law absolute immunity doctrine foreclose his lawsuit. This action against Elliott should therefore be dismissed with prejudice in its entirety.

<div align="center" style="margin-left:45%">

Respectfully submitted,

/s/Robin Locke Nagele
Robin Locke Nagele
Elizabeth M. Hein
POST & SCHELL, P.C.
1600 John F. Kennedy Boulevard, 13th Fl.
Philadelphia, PA 19103
215-587-1114 (P)
215-320-4702 (F)
rnagele@postschell.com
ehein@postschell.com

/s/ Charles R. Bacharach (w/permission)
Charles Bacharach (#06751)
GORDON FEINBLATT LLC
233 E. Redwood Street
Baltimore, MD 21202
410-576-4169 (P)
410-576-4292 (F)
cbacharach@gfrlaw.com

*Attorneys for Defendants*

</div>

Dated: January 27, 2017